# IN THE UNITED STATES DISTRICT COURT

# FOR THE WESTERN DISTRICT OF LOUISIANA

# SHREVEPORT DIVISION

BNR PRODUCTION PARTNERS LLC      No. _____

    Plaintiffs,

v.

J-BIRD WELL SERVICE, LLC, FREDCO LLC, SARKOZI & MAY, A&E OIL PRODUCTION CORP., ORVILLE SARKOZI, II, ALEXIS SARKOZI and ORVILLE SARKOZI, SR.

    Defendants.

## ORIGINAL COMPLAINT

Plaintiff, BNR PRODUCTION PARTNERS LLC, files this *Original Complaint* against Defendants J-BIRD WELL SERVICE, LLC, FREDCO, LLC, SARKOZI & MAY, ORVILLE SARKOZI, II, ALEXIS SARKOZI, and ORVILLE SARKOZI, SR., and states as follows:

## PARTIES

1. Plaintiff, BNR Production Partners LLC ("BNR"), is a Delaware limited liability company authorized and doing business in the State of Louisiana, with a domicile at 3411 Silverside Road, Tatnall Building, Suite 104, Wilmington, Delaware 19810-4809, and whose sole member is BNR Holdings, LLC, a Delaware limited liability company with an address at 107 Williamsport Circle, Salisbury, Maryland, 21804, with the members of BNR Holdings, LLC being (additional information regarding the members and related individuals can be provided as necessary, preferably under seal):

    A. Worth Capital Holdings 64, LLC, a Delaware limited liability company, whose members include:
- An individual domiciled in Wellington, Florida ("Individual Member 4").
- An individual domiciled in Miami Beach, Florida ("Individual Member 5").

    B. Wilson Capital Management, LLC, a Delaware limited liability company, whose members include:
- An individual domiciled in Teton Village, Wyoming ("Individual Member 6").

    C. Krusen Thompson Holdings, LTD a Virginia limited company, whose members are:
- An individual domiciled in Florida ("Individual Member 7").
- An individual domiciled in Virginia ("Individual Member 8").

    D. An individual domiciled in Little Rock, Arkansas ("Individual Member 1").

    E. Bradbury Capital, LLC, a Delaware limited liability company, whose members are:
- An individual domiciled in New York City, New York ("Individual Member 9").

    F. An individual domiciled in Arkansas ("Individual Member 2").

    G. An individual domiciled in Texas ("Individual Member 3").

2. Named herein as Defendants are:

    A. J-BIRD WELL SERVICE, LLC, a Louisiana limited liability company whose address is 8390 Oaklawn Street, Mooringsport, Louisiana 71060, and whose registered agent is Orville Sarkozi, 8390 Oaklawn Street, Mooringsport, Louisiana 71060 ("J-Bird"). Based on available information, J-Bird's only members are Orville Sarkozi and Alexis Sarkozi, understood to reside and domiciled at 618 Self Road, Belcher, Louisiana.

    B. FREDCO, LLC, a Louisiana limited liability company whose address is 8390 Oaklawn Street, Mooringsport, Louisiana 71060, and whose registered agent is Orville Sarkozi, 8390 Oakwlan [sic] Street, Mooringsport, Louisiana 71060 ("Fredco"). Based on available information, Fredco's only member is Orville Sarkozi, residing and domiciled at 618 Self Road, Belcher, Louisiana.

    C. SARKOZI & MAY, a Louisiana partnership whose address is 8390 Oaklawn Street, Mooringsport, Louisiana 71060, and whose General Partner is Orville F. "Fred" Sarkozi, and whose Limited Partner is Alexis Sarkozi, both of whom have an address identified of 8390 Oaklawn Street, Mooringsport, Louisiana 71060, understood to reside and have a domicile at 618 Self Road, Belcher, Louisiana ("Sarkozi & May").

    D. A&E OIL PRODUCTION CORP., a Louisiana corporation whose domicile and principal place of business is 9191 Belcher Oil City Road, and whose registered agent is Alexis Sarkozi at 8390 Oaklwan [sic] Street, Mooringsport, Louisiana (71060) ("A&E").

    E. ORVILLE F. "FRED" SARKOZI, II, who is of the age of majority and resides at 618 Self Road, Belcher, Louisiana 71004 ("Fred").

    F. ALEXIS SARKOZI, who is of the age of majority and resides at 618 Self Road, Belcher, Louisiana 71004 ("Alexis").

    G. ORVILLE SARKOZI, SR., who is of the age of majority and resides at 15215 US HWY 171 North, Hosston, Louisiana 71403 ("Orville Sr.").

## JURISDICTION AND VENUE

3. This Court has jurisdiction of this action under 28 U.S.C. § 1332 as this matter involves an actual controversy amongst citizens of different states involving an aggregated amount in controversy in excess of the minimum jurisdictional amount.

4. This Court has personal jurisdiction over the Defendants because each resides and does business in the State of Louisiana.

5. Venue is proper in this Court under 28 U.S.C. § 1391 because Defendants reside in this judicial district and because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

## FACTS

6. Defendants, Fred and Alexis were employed with BNR from approximately August of 2020 through May of 2023. Fred and Alexis were placed in positions of high responsibility and trusted to run the operations and manage the finances and assets of BNR. Instead, Fred and Alexis used their positions to breach the trust placed in them and engaged in a long campaign of self-dealing and personal use and usurpation of company assets and opportunities, to BNR's direct and serious detriment and damage. Fred and Alexis used company assets, funds, and business opportunities as their own, nearly driving the company out of existence in the process. Fred and Alexis were terminated as managers and employees of BNR and no longer represent or are employed by BNR in any capacity.

3

7. As addressed in more detail below, Fred and Alexis, either independently or through one of their various entities named as Defendants herein, including J-Bird, Fredco, Sarkozi & May, A&E, and Orville Sr., have intentionally and with gross negligence caused damages to BNR, including by at least:

(1) Theft or unlawful retainment and concealment of immovable and movable property owned by BNR.
(2) Authorizing and issuing improper payments, expenses, and reimbursements for personal benefit to the detriment of BNR.
(3) Conversion of assets and/or equipment, including the Missing Equipment as identified below, owned by BNR for personal benefit and to the detriment of BNR.
(4) Inflating the costs of expenses, assets, and costs for personal benefit and to the detriment of BNR.
(5) Direction of BNR employees, equipment, and assets, including the reimbursement of the same, for the personal benefit of Fred and Alexis, or their related entities, while said employees were in the scope of their daily work activities for BNR.
(6) Breaching their duties and obligations as Manager and Bookkeeper of BNR.
(7) Committing violations of the Louisiana Unfair Trade Practices Act against BNR.

8. During his employment, Fred provided services as a "Manager of Operations" on behalf of BNR. As Manager of Operations, Fred had wide-ranging responsibilities for directing daily work activities of BNR employees, overseeing daily operations, managing various employees, vendors, and resources, and managing certain assets of BNR at the direction of BNR's members.

9. Alexis was employed as Bookkeeper for BNR from August of 2020 to May of 2023. As BNR's Bookkeeper, Alexis was responsible for maintaining the books of BNR, in addition to being responsible for tracking and collecting all receivables and payables, at the direction of BNR's members. Alexis had direct access to BNR's banking accounts, banking information, banking checks, and held authority to write checks for the benefit of BNR.

10. Fred and Alexis were terminated from employment by BNR in May of 2023. BNR determined at that time that various assets could not be located or allocated for, that BNR's

financials were not in accordance with the representations made by Fred and Alexis, and that numerous payments and reimbursements were made to Fred and Alexis with no supporting documentation – these red flags led BNR's members to dig deeper into the actions of Fred and Alexis while at BNR.

11. As a part of these inquiries, BNR discovered the following:

1. That certain equipment and related assets owned by BNR could not be located or accounted for.
2. That movable and immovable property was diverted from the ownership and control of BNR for the benefit of Fred and Alexis, or their related entities named as Defendants herein.
3. That various BNR property was improperly converted for the benefit of Fred and Alexis, or their related entities named as Defendants herein.
4. The unauthorized use and direction by Fred and Alexis of BNR employees, equipment, and assets for their personal benefit, or for the benefit of their related entities named as Defendants herein, while simultaneously invoicing BNR for the use of its own employees, or without notification that the BNR employees, equipment, and assets were being diverted for their personal benefit.
5. Fred and Alexis submitted and paid, based on their unilateral approval, various reimbursement claims that did not provide sufficient information to justify the expense, did not attach evidence of the reimbursement or the need thereof, and for amounts that were not authorized or accepted practice.

## COUNT I: RECOVERY OF BNR EQUIPMENT UNLAWFULLY CONVERTED

12. After the termination of Fred and Alexis, BNR conducted a detailed review and search that identified various items, equipment, and assets as in the possession and control of Defendants, including Fred, Alexis, and Orville Sr. personally – assets owned solely by BNR that neither Fred nor Alexis nor Orville Sr. had authority to alienate or use for the benefit of any person or entity other than BNR. BNR requested that Fred, Alexis, and Orville Sr. return all property of BNR to its office or work location – this request was ignored.

13. BNR has identified the following items to date that remain unrecovered (the "Missing Equipment"), including:

1. Steam Truck

(Last Known Location: 15241 U. S. Hwy 71, Hosston, LA 71043)
2. Sterling Rig
    (Last Known Location: Petrol Yard - 32°52'59.3"N 93°52'42.8"W)
3. Assorted Pipe Materials
    (Last Known Location: Petrol Yard - 32°52'59.3"N 93°52'42.8"W)
4. Trailer with Saltwater Pump
    (Last Known Location: Petrol Yard - 32°52'59.3"N 93°52'42.8"W)

14. On information and belief, Defendants have all, or individually, taken possession of, had access to, used to their advantage, or currently possess the Missing Equipment. BNR has exercised all available legal options in retrieving these items, without success. In fact, BNR's efforts have been met with threats of violence in BNR's attempts to recover the Missing Equipment.

15. Further, Defendants, including at least specifically Fred, Alexis, and Orville Sr. have improperly converted to their own use and benefit, or otherwise wrongfully exercised dominion over, the Missing Equipment owned by BNR.

16. Upon information and belief, Defendants, including at least Fred, Alexis, and Orville Sr. had access to, or used to their personal advantage and to the detriment of BNR, the Missing Equipment while Fred and Alexis served as employees of BNR and upon termination removed the Missing Equipment from BNR's possession and control without authority.

17. Upon termination, Defendants have failed and refused to return the Missing Equipment to BNR, concealed the location of the Missing Equipment from BNR, and removed BNR documents, ledgers, invoices, and other vital documentation from BNR's regularly maintained business records.

18. Accordingly, the Defendants, including at least Fred, Alexis, and Orville Sr., have converted and improperly retained property owned by BNR, inconsistent with Plaintiffs rights and without permission or cause. The Missing Property has a value exceeding $100,000.00.

19. The actions described above constitute an unlawful conversion of movable property owned by BNR. BNR is entitled to either immediate return of the property in its original state, or compensation for the value of each should be awarded, with damages.

## COUNT II: DIVERSION OF ASSETS AND FRAUD

20. BNR further understands that while employed with BNR, Fred and Alexis improperly diverted or obtained certain assets that were intended only to be transferred to, or owned by, BNR.

21. One such asset group improperly diverted or obtained by Fred and Alexis, or by one of the additional named Defendant-entities operated by Fred and Alexis, is a mineral lease interest identified as the Land Company Lease (the "Land Company Lease"), in addition to the wells related thereto.

22. With respect to the Land Company Lease and related wells, Fred and Alexis negotiated an agreement whereby A&E Oil Production Corporation, doing business as "G&S" and owned and operated by Fred and Alexis, would transfer certain lease and well interests to BNR (the "Mineral Lease Transfer") in exchange for BNR taking on debt owed by A&E and for other valuable consideration.

23. The terms of the Mineral Lease Transfer were negotiated and approved by BNR's ownership to include the Land Company Lease and the related wells as part of the agreement. Without authority or agreement by principals of BNR, Fred and Alexis removed the Land Company Lease and the related wells from the negotiated transfer document immediately prior to closing the transfer, improperly retaining ownership of those interests in their own company, that company being A&E. A&E's retention or diversion of the Land Company Lease and related wells was never approved by the principals and ownership of BNR.

24. BNR thereafter undertook and continued operation and maintenance of those wells, at substantial cost to BNR, based on the understanding that such assets had been transferred to BNR. A&E allowed BNR to continue operating such assets without compensation or complaint with all proceeds going to and retained by A&E Oil Production Corp.

25. On December 13, 2023, effective as of January 1, 2023, A&E conveyed the Land Company Lease to J-Bird in a clear attempt to place those assets and the associated proceeds and revenues out of reach by BNR, including an attempt to avoid having related proceeds placed into suspense due to the disputed ownership. *See* Instrument #2952321, Caddo Parish Conveyance Records, recorded on December 13, 2023.

26. The actions by Defendants constitute fraud and improper diversion of assets and opportunities from BNR. Defendants misrepresented and manipulated the final documents contrary to the agreed transfer and related terms, including by Fred and Alexis by representation of the acquisition of the Land Company Lease, with the intent to deceive BNR, causing justifiable reliance that they were acting on behalf of, and in the interests of, BNR, and causing injury. BNR believes and asserts that additional assets have been fraudulently diverted from its control and ownership and will amend these allegations as discovery necessitates.

## COUNT III: DAMAGES INCURRED DUE TO THE UNAUTHORIZED EXPENSE AND USE OF BNR EMPLOYEES, ASSETS, AND EQUIPMENT

27. BNR further alleges that Fred and Alexis borrowed and directed various employees and equipment of BNR to conduct services for their personal benefit and for the benefit of their various companies named as Defendants herein, with no authorization, compensation, or benefit to BNR, and upon certain instances even charged BNR for the use of their own employees via J-Bird, Sarkozi & May, or Fredco. To date, BNR has identified the following unauthorized uses of its employees, many of which resulted in BNR being charged by Defendants for those BNR

employees to do work benefiting companies other than BNR while in the course and scope of their daily job responsibilities for BNR:

    (A)    Gary Howell – Mr. Howell is an employee of BNR who managed various crews and other BNR employees who on numerous occasions were sent by Fred and Alexis Sarkozi to complete activities for the benefit of their various entities while Mr. Howell's services were being billed hourly to BNR.

    (B)    Reginal Larry – Mr. Larry is an employee of BNR who conducted day-to-day activities for BNR at their offices and on their well sites who on numerous occasions were sent by Fred and Alexis Sarkozi to service locations of entities owned and managed by Fred and Alexis for their own benefit, while Mr. Larry's services were being billed hourly to BNR, and while Mr. Larry was driving a BNR company vehicle and BNR fuel from its office tank.

    (C)    Carl Stanfield – Mr. Stanfield is a mechanic hired by BNR to service its operational equipment and vehicles who on numerous occasions was sent by Fred and Alexis Sarkozi to service other equipment and vehicles for the benefit of themselves personally and for the benefit of their various entities, all while Mr. Stanfield's services were being billed hourly to BNR.

    (D)    Randy Hall – Mr. Hall managed the Connection Crew and was a salary employee that Fred and Alexis Sarkozi tasked to complete work and provide services for their personnel benefit, and the benefit of their various entities, all while Mr. Hall's services were being billed to BNR.

    (E)    Thomas Thompson – Mr. Thompson was a salary Pumper for BNR that Fred and Alexis Sarkozi sent to provide pumping services for their personal benefit, and for the benefit of their various entities, all while Mr. Thompson's services were being billed to BNR.

28.    BNR further asserts that Fred and Alexis used various equipment for their personal benefit, and the benefit of their various entities, without authorization, and in many cases while charging BNR for the same services through their various entities, including J-Bird, Sarkozi & May, Fredco, or A&E. The referenced equipment used for personal benefit includes rigs, trailers, pumpers, company vehicles, mowers, pipe materials, and heavy equipment.

## COUNT IV: UNAUTHORIZED PAYMENTS

29.  Subsequent to the termination of Fred and Alexis, BNR reviewed its books and accountings in depth and discovered that numerous unauthorized payments were submitted, approved, and paid directly to Fred and Alexis, for their personal benefit, either directly or through their entities including the additional Defendants, during their employment by BNR.

30.  BNR has at least identified the following unauthorized payments and reimbursements to date:

1. Payments related to the personal vehicles of Fred and Alexis, while also using company assets and fuel for personal benefit, including at least fuel and tires as follows:
   a. Invoice #201838689 for $1,234.72 for the purchase of four vehicle tires, and services, by Alexis Sarkozi from "Tire Crew LLC" in Shreveport, Louisiana;
   b. Invoice #236664 for $522.87 for the purchase of four trailer tires, and services, by CPH from "Tire Crew LLC" in Shreveport, Louisiana; and
   c. Invoice #1906 for $653.47 for "Gas Receipts 3/9 – 3/19" for the benefit of J-Bird Well Service for fuel used by Alexis Sarkozi in a company vehicle.

2. Reimbursement for Invoice #1709 dated 12/10/2020 for the "REMAINDER 1/2 OF SIDE BY SIDE" for an ATV from "G&C Honda" in Shreveport, Louisiana for $9,641.05, with the title being placed in the individual name of Fred Sarkozi.

3. Various Invoices and Reimbursements for the use of BNR employees for the benefit of Fred and Alexis Sarkozi, and/or their associated entities, as alleged in Count III above.

4. Various Invoices from "Porter's Industrial" for Fred Sarkozi's personal laundry, billed to BNR.

5. Various scrap metal payment sheets for payment received by Fred Sarkozi for materials owned by BNR that Fred Sarkozi sold without authority.

6. Various Invoices for reimbursement for items with no proof of purchase or evidence of benefit/use by BNR, including:
   a. Invoice #1869, 12/7/2021, includes a "Muslow S Pumping Unit" for $4,000.00.
   b. Invoice #1869, 12/7/2021, includes a "Muslow M 4 1/12 Packer" for $800.00.

7. Unauthorized dirt hauling services per Invoice #000004 – this is routine work BNR employees conduct as part of their daily activities.

8. Reimbursement Invoice #9104 that fails to support the need, use, description of item, or purpose of the purchase of "Tanks" of which BNR is unaware of the use, location, vendor, or actual purchase price of.

9. Reimbursement Invoice #1916 for the purchase of "Pipe" for $6,400 of which BNR is unaware of the use, location, vendor, or actual purchase price.

Additional evidence is being uncovered by BNR representatives, all of which will be further evidenced as discovery progresses.

## COUNT V: BREACH OF DUTY AND DIVERSION OF ASSETS

31. Fred and Alexis, as employees and managers of BNR, have breached their obligations to BNR by at least the following:

1. Providing equipment and services to BNR at inflated rates and costs through the various Defendant entities managed thereby, rather than having BNR acquire such equipment and services directly and at market rates;
2. Using BNR employees for their personal benefit;
3. Reimbursing themselves for unauthorized expenses and/or costs;
4. Reimbursing themselves for expenses and/or costs with no evidence of the need or use by BNR; and
5. Converting BNR property for their personal benefit.

In at least these regards, and as BNR believes more will be determined, Fred and Alexis abused their positions as Manager and Bookkeeper at BNR for personal benefit, and to the detriment of BNR.

32. To date, as more specifically alleged in Count II, BNR has discovered that while employed with BNR, Fred and Alexis diverted certain property from BNR agreements as approved and negotiated by the unauthorized alteration of conveyance and purchase agreements just prior to finality, for their sole benefit and to the detriment of BNR.

33. Additionally, while employed with BNR, Fred and Alexis improperly assigned certain interests, including at least but not limited to overriding royalty interests, held by BNR to themselves, or each other, or entities controlled by Fred and Alexis, including at least the other

named Defendants, without either the authority or approval of BNR. The list of diverted interests includes interests derived from at least the following identified Leases in the attached Exhibit "A."

34. As outlined in Counts I – IV, Fred engaged in conduct demonstrating a willful and intentional disregard for his duties as both a manager and fiduciary of BNR, including by engaging in grossly negligent conduct and by intentionally breaching his duty of loyalty by self-dealing. Fred has failed to discharge his duties in good faith, with diligence, care, judgment, and in the interests of BNR.

35. As outlined in Counts I-IV, Fred and Alexis have breached their fiduciary obligations as managers of BNR and have engaged in a clear pattern of self-dealing, intentional misconduct, and gross negligence, for the benefit of themselves or other entities under their direct control, and to the direct harm of BNR.

36. As outlined in Counts I-IV, Fred and Alexis further improperly acquired or held and leased equipment from their separately owned companies to BNR without authorization for higher than market value, and for no benefit to BNR.

37. BNR seeks damages for the unauthorized, intentional, grossly negligent, and self-dealing actions of Fred and Alexis while acting as managers of BNR.

38. BNR further alleges that Alexis engaged in conduct demonstrating a willful and intentional disregard for her duties as both bookkeeper and fiduciary of BNR, including by engaging in grossly negligent conduct and intentionally breaching her duty of loyalty by self-dealing while employed as the Bookkeeper for BNR.

39. BNR has been severely damaged by the actions and omissions described above and continues to investigate the losses incurred by the actions of Fred and Alexis, which losses far exceed $75,000.00 as currently identified.

40. For these actions and omissions, BNR has been damaged in an amount to be proven at trial.

41. BNR seeks a declaration of its rights to all interests and property identified in Exhibit "A" attached hereto, and a Court Order directing transfer and payment of damages for all such interests to Petitioner.

42. BNR also seeks return of all movable property of BNR, including the Missing Property, unlawfully retained and stolen by Fred and Alexis, or their associated entities, including at least the additional named Defendants, and payment for damages related thereto.

43. BNR further seeks damages for the breach of fiduciary duties by Fred as Manager of BNR and its affiliates, and a Court Order setting aside all unauthorized actions by Fred during his employment at BNR, including but not limited to:

 (1) All conveyances of immovable or movable property;
 (2) All directions of payment to any entity or person other than BNR or its affiliates;
 (3) All sales of immovable or movable property;
 (4) Assignment(s) of interests or property owned by BNR or its affiliates to any entity; and
 (5) Any other action, that may be determined throughout this litigation, that Fred and Alexis did not have authority to undertake or enact.

## **COUNT VI: LOUISIANA UNFAIR AND DECEPTIVE TRADE PRACTICE ACT**

44. Supported by those facts in Counts I-V, BNR further asserts that Defendants knowingly and intentionally violated the provisions of the Louisiana Unfair Trade Practices Act ("LUTPA") by engaging in various unfair methods of competition and unfair and deceptive acts and practices in the conduct of trade and commerce. La. R.S. 51:1401, et seq. The facts and allegations provided above, specifically including paragraphs six through forty-three, are incorporated in this section.

45. All of these actions enriched Defendants and impoverished Plaintiff and resulted in actual, sustained loss of assets, profits, and property by Plaintiff due directly to the fraud, misrepresentation, deception, breach of fiduciary duty, and other unethical conduct of Defendants.

46. The conduct of Defendants was immoral, unethical, unscrupulous, and substantially injurious. Consequently, Defendants violated the provisions of the LUTPA. La. R.S. 51:1405.

## CONCLUSION AND PRAYER

WHEREFORE, Plaintiff prays and requests that Defendants appear and answer, as required by law, and that, upon final trial, Plaintiff be granted judgment as requested herein granting them all applicable relief to which they may be entitled including a money judgment for all damages allowed by law, along with pre-judgment interest, post-judgment interest, and their costs and attorneys' fees.

Dated: April 19, 2024

Respectfully submitted,

BRADLEY MURCHISON KELLY & SHEA LLC

By: /s/ Leland G. Horton
Leland G. Horton (T.A.)
Louisiana Bar Roll No. 26928
Dakota S. Hawkins
Louisiana Bar Roll No. 38262

401 Edwards Street, Suite 1000
Shreveport, Louisiana 71101-5529
Telephone: (318) 227-1131
Facsimile: (318) 227-1141
lhorton@bradleyfirm.com
dhawkins@bradleyfirm.com
*Counsel for Plaintiff, BNR Production Partners LLC*